*This opinion is subject to revision before
publication in the Pacific Reporter*

**2017 UT 56**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOSEPH TOMLINSON,
*Appellant,*

*v.*

DOUGLAS KNIGHT CONSTRUCTION, INC., et al.,
*Appellees.*

DOUGLAS KNIGHT CONSTRUCTION, INC.,
*Third-Party Plaintiff/Cross-Appellant,*

*v.*

SUPERIOR INSULATION CO., INC., et al.,
*Third-Party Defendants/Cross-Appellees.*

No. 20150529
Filed August 29, 2017

On Direct Appeal

Third District, Salt Lake
The Honorable Ryan M. Harris
No. 100500668

Attorneys:

Joseph E. Wrona, Bastiaan K. Coebergh, Derek J. Onysko, Jarom B.
Bangerter, Park City, for Joseph Tomlinson

Jesse C. Trentadue, Noah M. Hoagland, Britton R. Butterfield, Jason R.
Mullis, Salt Lake City, for Douglas Knight Construction, Inc.

Brett N. Anderson, Scott R. Taylor, Salt Lake City, for Superior
Installation Co., Inc.

Scott T. Evans, Sarah E. Spencer, Gabriel K. White, Salt Lake City, for Picture Perfect Stone Masonry, LLC

Kumen L. Taylor, Richard L. Wade, Las Vegas, NV, for Akita Construction, Inc.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE HIMONAS, and JUSTICE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶ 1    Utah Code section 78B-4-513(1) provides that "an action for defective design or construction is limited to" an action for "breach of . . . contract, whether written or otherwise, including both express and implied warranties." The statute also states that such a claim may be brought only by a person who is "in privity of contract with the original contractor" or by a person with a right to sue as an assignee of a person in privity. *Id.* § 78B-4-513(4), (6). In this case the district court dismissed a homebuyer's construction defect claims against the company that built his home. We affirm that decision on the ground that the homebuyer was not in privity with the contractor and had no right to sue as an assignee.

I

¶ 2    This case began when Lot 84 Deer Crossing, a single-purpose LLC, acquired a piece of property. Lot 84 then entered into an agreement with Douglas Knight Construction, Inc. (DKC) to build a house on the property. In that agreement DKC agreed to provide a one-year warranty on the construction: "Contractor further warrants the Work as per Utah state code for a period of one year." Lot 84 subsequently assigned all its rights to the home and the construction agreement to Outpost Development, Inc.

¶ 3    As construction on the home neared completion, Outpost sold the home to Joseph Tomlinson. Outpost did not, however, assign its interest in the construction agreement to Tomlinson, even though several construction defects had already come to light prior to the sale.

¶ 4    The most glaring defect was a leak that caused significant water damage. Pursuant to the express one-year warranty in the

construction agreement, Outpost asked DKC to repair the defects. But despite DKC's efforts to do so, Tomlinson discovered that the leak still existed more than a year after he purchased the home.

¶ 5    Nearly another year after this discovery, Tomlinson hired a different contractor to fix the leak and repair the water damage. Tomlinson also discovered several other purported construction defects while these repairs were underway.

¶ 6    Tomlinson later filed this suit against both DKC and Outpost, seeking compensation for the damages to his home. Outpost declared bankruptcy, however, and was dismissed from the suit.

¶ 7    In the course of Outpost's bankruptcy proceedings Tomlinson was assigned "all of Outpost's right title and interest in and to any and all rights, claims, causes of action, choses in action, rights to payment, and judgments of any kind that Outpost has asserted . . . or may otherwise assert, against" DKC. Tomlinson maintained that this assignment encompassed claims against DKC for breach of the construction agreement—including breaches of the express one-year construction warranty, the implied warranty of good faith and fair dealing, and the implied warranty of workmanlike manner and habitability. He accordingly amended his complaint against DKC to include those claims, which are the claims at issue on this appeal.

¶ 8    DKC responded by filing various motions to dismiss and for summary judgment. Those motions were granted. The district court first granted a motion to dismiss Tomlinson's claim for breach of the implied warranty of workmanlike manner and habitability. It noted that the warranty protects homeowners only from harm caused by a "builder-vendor" or "developer-vendor." *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 60, 221 P.3d 234. And it determined that DKC was not a vendor of any kind because DKC never owned or sold the property.

¶ 9    The district court also granted a motion for summary judgment on Tomlinson's remaining claims. In dismissing the remaining claims the district court ruled that Tomlinson had never acquired any viable construction defect claims against DKC. It reasoned that the bankruptcy assignment did not give Tomlinson a direct interest in the construction agreement. Instead it held that Tomlinson's claims were "entirely dependent upon Outpost first being found liable to [Tomlinson] for damages." And because Outpost had never been found

liable in this case, the court concluded that none of the assigned claims could survive.

¶ 10  Before dismissing Tomlinson's claims, the district court also dismissed a third-party complaint filed by DKC—a complaint seeking indemnity and contribution from DKC's subcontractors in the event it was found liable to Tomlinson for any construction defects. The district court held that this third-party complaint was not timely filed.

¶ 11  Tomlinson appealed the dismissal of his claims and DKC filed a cross-appeal on the dismissal of its third-party complaint. We review the appealed orders for correctness. *See State v. Ririe*, 2015 UT 37, ¶ 5, 345 P.3d 1261 (*de novo* review of decision on motion to dismiss); *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56 (*de novo* review of summary judgment).

II

¶ 12  By statute, an "action for defective design or construction is limited to" an action for "breach of . . . contract, whether written or otherwise, including both express and implied warranties." UTAH CODE § 78B-4-513(1). Except as expressly provided, moreover, "an action for defective design or construction may be brought only by a person in privity of contract with the original contractor." *Id.* § 78B-4-513(4). The statute makes an express exception for assignees; it says that "[n]othing in this section precludes a person from assigning a right under a contract to another person, including to a subsequent owner or a homeowners association." *Id.* § 78B-4-513(6). And it also provides for claims for "damage to other property or physical personal injury" by persons other than those in privity. *Id.* § 78B-4-513(2).

¶ 13  All of Tomlinson's claims are covered by this statute. He seeks to hold DKC liable for "defective design or construction." And his right to sue—for breach of contract or for express or implied warranty—is thus preserved only if it aligns with the terms of this statute.

¶ 14  Tomlinson is not asserting claims for damage to "other property" or "physical personal injury." But he does purport to assert claims as an assignee of parties in privity with DKC—first through an assignment made when Outpost purchased the property from Lot 84 and later by an assignment in the Outpost bankruptcy proceedings.

¶ 15  We find no basis in either of these assignments for Tomlinson's claims, however. And we affirm the dismissal of Tomlinson's action on that basis.

¶ 16 The DKC construction agreement was entered into with Lot 84. And that contract included an express one-year warranty and an implied warranty of good faith and fair dealing.[1] These warranties, moreover, were assigned to Outpost when it purchased the property from Lot 84. But Outpost made no similar assignment to Tomlinson when he later purchased the property from Outpost. So Tomlinson is in no position to sue as an assignee of claims belonging to Lot 84—or by extension (and assignment) to Outpost—as Tomlinson was not assigned any contract or warranty rights arising under the DKC construction agreement.[2]

¶ 17 Tomlinson seeks to avoid that problem by pointing to the assignment in the Outpost bankruptcy. There Tomlinson was assigned claims "that Outpost has asserted . . . or may otherwise assert" against DKC. And Tomlinson insists that the bankruptcy assignment encompassed all warranty claims that existed when Outpost owned the home.

¶ 18 But Tomlinson's position cannot be squared with the terms of the bankruptcy assignment. That assignment covered only claims that Outpost "ha[d] asserted" as of the time of the bankruptcy or that it "may [yet] assert" against DKC. Thus, the bankruptcy assignment focused on a specific timeframe—on the time of the assignment. It encompassed only claims that previously had been asserted or that could be asserted in the future. By clear implication, the bankruptcy

---

[1] *See Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193 ("An implied covenant of good faith and fair dealing inheres in every contract.") (citation omitted).

[2] The outcome would obviously have been different if Tomlinson had acquired Outpost's claims or interest in the Construction Agreement *at the time he purchased the home*. With that in mind, future homebuyers would do well to obtain an express assignment of all available warranties at the time they acquire a home. And it might well serve the interests of such homebuyers if a standard assignment-of-warranties clause were included in the standard real estate purchase contract. But no such assignment was made at the time of purchase here, and the failure of that assignment forecloses Tomlinson's claim under the statute.

assignment omitted claims that had not been asserted and could not be asserted by Outpost—such as claims that it hypothetically could have brought against DKC at an earlier period (when Outpost owned the home).

¶ 19 That is fatal to Tomlinson's position. Outpost no longer owned the home at the time of the bankruptcy assignment. For that reason Outpost was in no position to be damaged directly by any harm to the home. It accordingly could assert a claim for damages only if it was found liable to a subsequent property owner for some harm to the home. In that event, Outpost could be in a position to assert a breach of contract claim against DKC in the nature of contribution. *See Shurtleff v. United Effort Plan Tr.*, 2012 UT 47, ¶ 40, 289 P.3d 408 (acknowledging a right to contribution where one party pays damages for which another party is at least partially responsible). Yet Outpost was never held liable to a subsequent owner. And Tomlinson's claims against Outpost were discharged during the bankruptcy proceedings. So Outpost was not damaged—and can no longer be damaged—by any alleged breach of contract by DKC.

¶ 20 Tomlinson accordingly is in no position to assert a claim under the Outpost bankruptcy assignment. As of the time of that assignment Outpost had not asserted a direct construction defect claim against DKC.[3] And it could not assert a claim going forward. At most it could be said that Outpost *could have asserted* a direct claim at the time it owned the home. But such a hypothetical claim was not assigned to Tomlinson in the bankruptcy proceedings, and he accordingly has no viable contract or warranty claims under the operative statute.

### III

¶ 21 We affirm the dismissal of Tomlinson's claims under the terms of Utah Code section 78B-4-513. We hold that Tomlinson had no right to sue under this statute because he did not acquire a right to sue for breach of contract or warranty as an assignee—at the time he purchased the home or at the time of the assignment in the Outpost bankruptcy.

---

[3] Outpost did assert cross-claims against DKC—claims for indemnity, contingent on Outpost being found liable as a defendant. But those claims are unavailing because Tomlinson's claims against Outpost have been discharged.

¶ 22 In so holding we do not reach the question whether the warranty recognized in our decision in the *Davencourt* case should be extended to the circumstances at issue here. In *Davencourt* we limited the warranty of habitability and workmanlike manner to "builder-vendor[s]" and "developer-vendor[s]." 2009 UT 65, ¶ 60. Tomlinson has advanced policy reasons for extending such warranties to construction companies that build homes for single-purpose LLCs established for the sole purpose of selling the home to a purchaser. We do not and need not reach that question here, however, because we conclude that any warranty claim that Tomlinson might assert is foreclosed under Utah Code section 78B-4-513.

¶ 23 That decision also forecloses the need to address the issues raised by DKC in its cross-appeal. Because we affirm the dismissal of all of Tomlinson's claims, DKC has no actionable claims against its subcontractors for indemnity or contribution. And for that reason we do not reach the question whether the district court erred in dismissing DKC's third-party complaint as untimely.